## ELIZABETH GRUBER v. GERMAN ROMAN CATHOLIC AID SOCIETY OF MINNESOTA.[1]

January 27, 1911.

Nos. 16,929—(211).

**Application for life insurance — answers.**

A general question, in an application for life insurance, calling for information concerning "former illnesses" of the applicant, does not require the disclosure of an illness or ailment of a trifling, temporary, or unimportant nature, but only those of a serious, dangerous, or permanent character.

[1] Reported in 129 N. W. 581.

**Question for jury.**

The question whether the application in this case failed to disclose a prior serious or permanent illness was one of fact for the jury, and the evidence sustains the verdict.

**Charge to jury.**

The assignments challenging the instructions of the court present no reversible error.

Action in the district court for Stearns county to recover $1,000 upon a policy of life insurance. The answer set up that certain answers of decedent to the application for insurance were knowingly and wilfully false, that the questions and answers were material to the risk and were relied upon by the defendant, and alleged that at the time of the application and of his admission to the society he was unsound in health and afflicted with the incipient stages of tuberculosis of the larynx. The reply denied these allegations of the answer and alleged that decedent was received as a member of defendant society upon the recommendation of the president and secretary of the local society to which he belonged and upon the medical examination and certificate of the examining physician of defendant society, and its acting agent. The facts are stated in the opinion. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $1,040. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*O. E. Holman,* for appellant.

*Theo. Bruener,* for respondent.

BROWN, J.

Defendant is a mutual aid association organized under the laws of the state. Rudolph Kracker was in his lifetime a member of the society, and the holder of a certificate of insurance therein for $1,000, payable on his death to his mother, plaintiff herein. The certificate was issued to him on January 29, 1907. He died May 26, 1909, and, after proper proofs of death had been made, plaintiff, beneficiary named in the certificate, defendant having refused payment, brought this action to recover thereon. Plaintiff had a

verdict, and defendant appealed from an order denying its motion for judgment notwithstanding the verdict or a new trial. The questions presented are: (1) Whether the court erred in refusing to direct a verdict for defendant; and (2) whether there was reversible error in its instructions to the jury.

1. Defendant was formed along the lines of all societies of the kind. Members are admitted upon application, and losses from death are paid from assessments made in accordance with established rules and regulations. The application required of those seeking admission contains numerous questions designed to elicit information concerning the health and physical condition of the applicant, as a guide to the society in determining whether to admit them. It also contains the usual stipulation to the effect that, if any of the questions be untruthfully answered by the applicant, all obligations of the society cease, and the certificate of membership issued thereon becomes null and void. The application involved in the case at bar, as presented to and acted upon by the society in admitting decedent to membership, contained, among others, the following question and answer, namely:

Question—"Former illnesses and injuries?" Answer—"Small-pox in 1904. Complete recovery."

It is the contention of defendant that this answer, though apparently complete, was in fact incomplete and untrue; that prior to the application for membership decedent had suffered from tubercular laryngitis, a serious illness, and had received numerous treatments therefor, and in fact had been advised by his physician that a change of climate was essential to his recovery; and it is insisted that, because this illness was not disclosed, the answer was untruthful, and the defendant relieved from all obligations under the contract.

There can be no controversy but that the question was material, and a truthful answer necessary to give validity to the insurance contract. It was important for the society, in determining the question of the admission of decedent, to know the truth respecting his previous physical condition. Mattson v. Modern Samaritans, 91 Minn. 434, 437, 98 N. W. 330; Taylor v. Grand Lodge. A. O. U. W., 96

Minn. 441, 450, 105 N. W. 408, 3 L.R.A.(N.S.) 114. And if the answer was in fact not true, and decedent thereby concealed information which the society was entitled to, his good faith in making the same would perhaps not change the situation as a matter of law. Perine v. Grand Lodge A. O. U. W., 51 Minn. 224, 53 N. W. 367. But the rule is settled, in this state and elsewhere, that general questions of the character of the one here involved do not require the disclosure of prior ailments of a trifling, temporary, or unimportant nature. Rupert v. Supreme Court U. O. F., 94 Minn. 293, 102 N. W. 715; Modern Woodmen v. Wilson, 76 Neb. 344, 107 N. W. 568. The rule no doubt is otherwise where the questions are specific.

There is no question in the case at bar that decedent was treated by a physician for some sort of an illness in 1905 and 1906, in reference to which the trial court, recognizing the rule just stated, instructed the jury that if the illness was of a serious, dangerous, or permanent character, or of a nature continuous and not readily recovered from, it was decedent's duty to make it known, and if he failed to do so no recovery could be had; but if the illness was merely temporary in its character, something that was unattended with any serious consequences, or from which serious consequences were not to be apprehended, something that passed away, from which he recovered and was forgotten, the failure to disclose it would not avoid the contract. The instructions correctly stated the law controlling the case, and we have only to consider the question whether the evidence justified the submission of the case to the jury.

The evidence tends to show that during parts of the years 1905, 1906 decedent was treated by his family physician for a throat trouble, the nature and character of which do not seem to have been disclosed to decedent. He was advised to make a change of climate, in the expectation that the difficulty would disappear. Acting on this advice, decedent, in the spring of 1906, moved to Colorado, and remained there until August of that year, when he returned to his home in this state. He was a young man of about twenty-four years of age, and resided with his parents upon a farm, where he was raised. After his return from Colorado, he reported to his physi-

cian, who, noting his improved condition, pronounced him cured of the ailment for which he had treated him, and advised a return to the farm. Decedent had gained in flesh while away, and there was no return of the throat trouble until long after he became a member of defendant's society. He made his application for membership in January, 1907, and was then examined by defendant's medical examiner, who pronounced him strong, healthy, and vigorous, disclosing no evidence of disease or infirmity. In the fall of 1908, nearly two years from the date of his membership, he was again taken ill, and died of tubercular laryngitis in the spring of 1909.

It is the contention of defendant that the evidence is practically conclusive that decedent was suffering from this disease during the time of his treatment in 1905 and 1906, that his failure to disclose the same is fatal to plaintiff's right to recover, and that the court below should have so charged the jury.

Though the question is a close one on the evidence, we conclude that it was properly submitted to the jury. Decedent's physician did not attempt in his testimony to name the illness which he treated in 1905. He said, on being questioned upon the subject, that he "surmised" it to be laryngitis, but doubted the correctness of his diagnosis when decedent returned from Colorado fully recovered and in good health and condition. Controlling effect is not to be given the advice of the physician. Suggestions that a change of climate would be beneficial are often made by physicians, when no serious ailment or disease is present. There is no evidence that he informed decedent of his impressions, and it is clear from the record that decedent had no thought that he was suffering from a serious ailment. He fully believed that his throat trouble had disappeared, and there can be no question that his failure to disclose the matter in answer to the question referred to was not for the purpose of concealment. It was apparently a forgotten matter with him. The physician also testified that the disease finally resulting in death might well have originated and come on after decedent had become a member of the society.

On the other hand, a physician called by defendant testified that

in his opinion, based upon the history of the case, decedent was afflicted with the particular disease from 1905 to the time of his death. Defendant offered other evidence tending to show the appearance of decedent during the years of 1907 and 1908, which tended to indicate some permanent infirmity or illness, conflicting with which was evidence offered by plaintiff that after decedent returned from Colorado, and up to the time he was taken with his fatal illness, his appearance indicated good health and a robust condition.

In this condition of the evidence we are not justified in declaring as a matter of law that decedent's illness in 1905 was that of which he subsequently died, or that it was of a serious character, within the rule controlling the question.

2. A consideration of the charge of the court, taken as a whole, fairly presented the law of the case to the jury, and we discover therein no reversible error. We do not concur in the contention of the defendant that the effect of the charge upon the minds of the jury was to require proof on the part of defendant that the illness "was of a serious, dangerous, and permanent character." The charge was evidently given with some care and in substantially this language: "If this sickness, or illness, or trouble, whatever it was, that he had in 1905, was serious, or dangerous, or permanent, or something that the effects of it were continuous, something that was not readily recovered from, it was his duty to disclose it." This clearly could not have impressed the jury with the theory that the illness, to require its disclosure, should be shown to have been something of a permanent *and* fatal character. If counsel thought the jury likely to misunderstand the terms, "serious," "dangerous," "permanent," or the phrase "not readily recovered from," further instructions should have been requested. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754.

Order affirmed.

JAGGARD, J., took no part.