Geraldine HIGGINS, on Behalf of and as Guardian of Dennis HIGGINS; Geraldine Higgins, individually and Vernon Higgins, Respondents,

v.

J.C. PENNEY CASUALTY INSURANCE COMPANY, Appellant.

No. C6-87-933.

Court of Appeals of Minnesota.

Oct. 6, 1987.

William L. Tilton, Tilton & Rosenbaum, St. Paul, for respondents.

George Charles Hottinger, Chadwick, Johnson & Condon, P.A., Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a grant of summary judgment and award of prejudgment interest to respondent Geraldine Higgins, on behalf of and as guardian of Dennis Higgins. Appellant J.C. Penney Casualty Insurance Company contests the award of prejudgment interest. We affirm.

## FACTS

On April 10, 1982, Dennis Higgins was seriously injured while a passenger in a one-car accident. He was 25 years old at the time and lived with his parents on their farm. As a result of his injuries, his mother Geraldine was appointed his guardian. Dennis continues to live with his parents, who have assumed responsibility for his support.

On July 24, 1982, shortly after Dennis' release from the hospital, the Higgins were visited by a representative of J.C. Penney. J.C. Penney had issued two automobile policies to Dennis' parents, Vernon and Geraldine, who were separately named insureds. The underinsured motorist endorsement afforded limits of $25,000 per covered person subject to $50,000 per accident.

Several requests were thereafter made for a statement of J.C. Penney's position on underinsured motorist coverage not only for Dennis but also for his parents. In a letter dated March 15, 1984, the Higgins' attorney sought a "formal, written statement of the position of J.C. Penney in regard to Underinsured Motorist coverage available to the Higgins family as a result of the * * * accident" and demanded that J.C. Penney pay to the Higgins "$200,000

for its underinsured motorist coverage obligation."

In June 1984, Geraldine Higgins, on behalf of and as guardian of Dennis Higgins, Geraldine Higgins, individually, and Vernon Higgins commenced this declaratory judgment action seeking a variety of relief, including a determination that each of them was entitled to coverage for medical expenses and underinsured motorist coverage.

J.C. Penney's initial response was that the underinsured motorist endorsement was not part of the policies at the time of the accident. At some point, it changed its position and agreed that the underinsured motorist endorsement was part of the policies at the time of the accident. In a memorandum supporting a motion for summary judgment, J.C. Penney stated:

> In the instant proceeding, all plaintiffs claim entitlement to underinsured motorists' coverage. While defendant admits that plaintiff, Dennis Higgins, is qualified to make an underinsured motorist's claim subject to the limits prescribed by the policies, it has denied that the other plaintiffs so qualify.

Reasoning that Geraldine and Vernon are not legally obligated to provide care for their son, the trial court concluded that they have no claim for underinsured motorist benefits and granted J.C. Penney's motion for summary judgment. That decision was subsequently affirmed by this court in *Higgins v. J.C. Penney Casualty Insurance Co.*, 388 N.W.2d 429 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Aug. 13, 1986).

In August 1986, counsel for the Higgins sent a letter to J.C. Penney which stated:

> It's now time to see whether there are any disagreements on the remaining issues. J.C. Penney had two relevant policies of insurance, each with $25,000.00 of coverage per person. I believe the law is settled that those coverages must be stacked and that interest is owing from the date of the accident.

In response, J.C. Penney agreed to issue a check for $50,000, but denied the request for prejudgment interest because

First, to our knowledge, this is the first time a demand has been made for prejudgment interest on behalf of Dennis Higgins. Secondly, we are not aware of any demand ever having been made on behalf of Dennis for any other sums. Finally, there has never been a claim or action commenced on behalf of Dennis upon which interest could accrue.

The Higgins thereafter filed a motion seeking to clarify the trial court's previous order granting summary judgment to J.C. Penney. In addition, they moved for summary judgment on behalf of Dennis and for prejudgment interest.

The trial court agreed that its previous summary judgment order related only to the claims of Vernon and Geraldine Higgins, individually. It explained that "[t]he claim of Dennis Higgins * * * was not briefed by the parties, was not addressed by the Court in its Order and Memorandum, and was not intended by the Court to be disposed of in its June 17, 1985 Order." The court further granted summary judgment to Dennis and awarded prejudgment interest on the amount owed since July 24, 1982, "the date of defendant J.C. Penney's first clear notice of the catastrophic extent of Dennis Higgins' injuries," to October 23, 1986, the "date of tender of $50,000.00 to plaintiff Dennis Higgins."

This appeal followed entry of judgment.

## ISSUE

Did the trial court err in its award of prejudgment interest?

## ANALYSIS

*Arbitration*

Many of J.C. Penney's arguments are based on its assertion that prejudgment interest is precluded as an arbitration matter. The underinsured motorist coverage endorsement of the policy in this case provides that "either party *may* make a written demand for arbitration" where the parties disagree on coverage or on the amount of damages. (Emphasis added.) Because arbitration was never requested by either party, J.C. Penney's arguments relating to arbitration are without merit.

*Interest from July 1, 1984 to October 23, 1984*

Prejudgment interest is awardable on pecuniary damages "from the time of commencement of the action." Minn.Stat. § 549.09 (1986). When section 549.09 was enacted, the Minnesota legislature determined that interest would begin to accrue as of July 1, 1984, on any pending cause of action. *See* 1984 Minn.Laws ch. 472, § 2; *L.P. Medical Specialists, Ltd. v. St. Louis County,* 379 N.W.2d 104, 109 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Jan. 31, 1986).

J.C. Penney contends that the requirements for an award of prejudgment interest under section 549.09 have not been met, particularly because there has never been an action for damages on Dennis' behalf. We disagree. The complaint in this declaratory judgment action, which was served on June 4, 1984, sought underinsured motorist coverage for all of the Higgins, including Dennis.

J.C. Penney also appears to argue that the award of prejudgment interest is improper because this is only a declaratory judgment action seeking a declaration as to underinsured motorist coverage, and that the trial court did not specifically find a breach of contract. Given the uncontested nature and extent of Dennis' injuries, and J.C. Penney's undisputed liability for underinsured motorist benefits, we believe that it is clear that the insurance contract was breached and that an award of damages to Dennis was entirely proper. *See* Minn.Stat. § 555.08 (1986) ("Further relief based on a declaratory judgment * * * may be granted whenever necessary or proper").

Nor is J.C. Penney correct when it asserts that a demand for settlement was not made until August, 1986. Following the accident, several oral requests were made regarding J.C. Penney's position, and in a letter dated March, 1984, the Higgins' attorney sought J.C. Penney's position with regard to underinsured motorist coverage available to the Higgins family and demanded payment. We believe that once

J.C. Penney became aware of Dennis' injuries, it had an affirmative duty to inquire into the particular benefits that the Higgins were claiming and to provide the Higgins with a position on their claim. *See Spira v. American Standard Insurance Co.*, 361 N.W.2d 454, 457 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Mar. 29, 1985). We therefore conclude that Dennis is entitled to prejudgment interest since July 1, 1984, under section 549.09.

*Interest from July 24, 1982 to July 1, 1984*

Before section 549.09 was amended to allow prejudgment interest in most cases, Minnesota case law allowed prejudgment interest in cases involving liquidated damages or, if unliquidated, where damages were readily ascertainable by computation or reference to generally recognized standards and not dependent upon contingencies. *Summit Court, Inc. v. Northern States Power Co.*, 354 N.W.2d 13, 16 (Minn. 1984) (quoting *Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971)); *Polaris Industries v. Plastics, Inc.*, 299 N.W.2d 414, 418 (Minn. 1980).

In this case, it was clear from the outset that Dennis' injuries exceeded the tortfeasor's liability limits of $50,000. The trial court reasoned that J.C. Penney could therefore calculate its liability at the time its representative visited the Higgins' home on July 24, 1982. This reasoning finds support in the following paragraph from *Equitable Life Assurance Society of the United States v. Miller*, 229 F.Supp. 1018 (D.Minn.1964):

> Interest is either compensation for the use of another's money or it is an amount awarded for the default resulting from a refusal to pay money when due. In the former sense the liability is contractual, and a person is not chargeable with interest unless he has agreed to pay it, while in the latter sense the damage resulting from delay in making the payment is the value of the use of the money measured by the statutory rate of interest. *Lund v. Larsen*, 222 Minn. 438, 24 N.W.2d 827 (1946). *Once proofs of loss have been made a denial*

*of liability will subject an insurer to liability for interest from that date. Perine v. Grand Lodge A.O.U.W. of Minn.*, 51 Minn. 224, 53 N.W. 367 (1892). The same rationale would appear to require the insurer to pay interest where there has been unreasonable delay in paying the proceeds of the policy though no formal denial of liability.

*Equitable Life*, 229 F.Supp. at 1021 (emphasis added). We conclude that the trial court did not err in calculating prejudgment interest from July 24, 1982, the date J.C. Penney first had knowledge of its liability for underinsured motorist benefits on behalf of Dennis.

### DECISION

The trial court's award of prejudgment interest is affirmed.